Judge MANNHEIMER.
In August 2006, Karan Vanae Clifton was working at an Anchorage longterm care facility, where she was responsible for administering medications to patients. Two managers of the facility-Clifton's direct supervisor, and a human resources manager-asked Clifton to meet with them to discuss her failure to properly document her administration of medications, as well as Clifton's comments that government agents were engaged in a conspiracy to sabotage her life.
At this meeting, Clifton was told that she would have to submit to a psychiatric examination before she could return to work. In response, Clifton pulled a semi-automatic pistol from her purse, shoved it against her supervisor's chest, and pulled the trigger. Fortunately, Clifton had neglected to rack the pistol, so there was no cartridge in the firing chamber.
Clifton's supervisor was able to wrest the pistol from her, and several employees restrained Clifton until the police arrived.
Clifton was ultimately convicted of one count of attempted murder (for trying to kill her supervisor) and one count of third-degree assault (for placing the human resources manager in fear of imminent serious physical injury). She received a composite sentence of 50 years' imprisonment with 20 years suspended (i.e. , 30 years to serve).
In this appeal, Clifton challenges several of her conditions of probation, and she also requests a correction of her pre-sentence report. For the reasons explained in this opinion, we vacate the challenged conditions of probation, and we direct the superior court to amend one of the statements in the pre-sentence report.
The probation condition requiring Clifton to take all medications prescribed for her by a licensed medical practitioner approved by her probation officer
Clifton challenges Special Probation Condition 11, which requires her to "ingest, take[,] or receive by way of injection medications as prescribed by a licensed practitioner who has been approved by the probation officer or by [the Anchorage Community Mental Health Services' Institutional Discharge Program] in consultation with the defendant."
We have recently addressed this same probation condition in two published decisions.
*303 In Kozevnikoff v. State[1] and in Love v. State ,[2] we held that this type of probation condition must be subjected to special scrutiny-both because this probation condition restricts a defendant's right of self-determination regarding medical treatment, and because it potentially requires a defendant to take psychotropic medication against their will.
In Clifton's case, even though the challenged probation condition ostensibly applies to any and all medications that might be prescribed by Clifton's doctors, we do not read the condition so broadly. This probation condition must be interpreted in the context of Clifton's case-and, given that context, we interpret the probation condition as applying only to mental health medication that Clifton's medical providers deem necessary for her rehabilitation and/or the safety of the public.
But even so limited, the challenged probation condition falls squarely within the scope of our decision in Kozevnikoff . In Kozevnikoff , we held that even when the record suggests that a defendant might need psychotropic medication, the sentencing judge must not impose a condition of probation that requires the defendant to take such medication against their will unless the judge has held a hearing "where medically informed expert testimony ... is presented to the judge", and where the defendant has "the opportunity to present [their] own expert testimony, and to argue for alternatives to any medication at all, or to a particular medication."[3]
We also recognized in Kozevnikoff that, especially when a defendant receives a lengthy term of imprisonment (as is true in Clifton's case), it is often better for the sentencing court to make this type of decision closer to the time when the defendant is released on probation. Accordingly, we held that a sentencing judge has the authority to impose a condition of probation that calls for a judicial hearing near the date of the defendant's release-to determine whether, at that time, the circumstances justify an order compelling the defendant to take medication. Ibid.
The record in Clifton's case shows that the sentencing judge affirmatively evaluated the need to compel Clifton to take psychotropic medication. However, as we are about to explain, the record also shows that the judge did not apply the correct level of scrutiny to the proposed probation condition.
The author of Clifton's pre-sentence report noted that Clifton had been diagnosed as suffering from "Delusional Disorder, Persecutory Type". According to the pre-sentence report, this delusional disorder is a chronic mental illness that is "frequently lifelong", and treatment of this disorder would normally include "a combination of drug therapy and psychotherapy". The author of the pre-sentence report warned that if Clifton did not comply with this medication regimen, "her delusional beliefs [could] escalate to another confrontational situation"-i.e. , a return to the "bizarre and violent behavior" she exhibited in this case.
The prosecutor likewise asked the sentencing court to require Clifton to take prescribed psychotropic medication because, unless the conditions of probation addressed Clifton's mental illness, "you have a walking time bomb".
Clifton's defense attorney acknowledged that Clifton's statements and behavior "may have" reflected disordered thinking, but the defense attorney objected to the proposed probation condition because no one had presented the court with information about "what medication [Clifton] ha[d] been prescribed, by whom or for what purpose", or "the effectiveness of a particular medication, or its side effects".
The defense attorney noted that several years had passed since Clifton's offenses and that, during those years, the Department of Corrections had not found it necessary to *304 forcibly medicate Clifton. Instead, according to the defense attorney, "[Clifton's] current mental health treatment providers describe[d] her as capable of functioning in society".
The sentencing judge noted the "long history" of Clifton's case (i.e. , the several occasions on which the court litigated Clifton's competency to stand trial), and the judge recounted his own experiences with Clifton in court. He conceded that Clifton was currently doing "very well in a controlled environment", and that the "signs and symptoms of her mental illness [had] dissipated", but the judge noted that, in times past, Clifton's mental illness had rendered her "incomprehensible", with perceptions that were "not rooted in reality".
The sentencing judge concluded that Clifton's prospects for rehabilitation rested on the "degree of [her] mental illness, and ... how responsive [her] condition is to treatment", as well as the possibility of "relapse into similar conduct once Ms. Clifton is out of a controlled environment". The judge admitted that he did not currently know the degree of Clifton's mental illness, or how responsive this illness would be to treatment, or whether it was likely that this illness would lead Clifton to engage in violent conduct once she was released. But even so, he imposed the proposed probation condition.
The procedure followed in Clifton's case does not comport with our holding in Kozevnikoff -that even when the record suggests that the defendant needs psychotropic medication, a sentencing judge must not compel the defendant to take such medication unless the judge has heard medically informed expert testimony on this question, and the defendant has been given the opportunity to present their own expert testimony, and to argue for alternatives or limitations on the proposed probation condition.[4]
In addition, because Clifton has been sentenced to serve 30 years in prison, we conclude that, in any event, it was premature for the judge to impose a probation condition compelling Clifton to take psychotropic medication. Instead, as we suggested in Kozevnikoff , the judge should have waited until closer to the time when Clifton would be released.
Accordingly, we vacate Special Probation Condition 11, and we direct the superior court to reconsider this matter. If, after hearing expert testimony, the superior court again concludes that there is a need to require Clifton to take psychotropic medication, the court should nevertheless frame the probation condition so that the final decision on this issue is delayed until nearer to Clifton's release date.
The probation condition requiring Clifton to "cooperate" with obtaining a guardian or conservator for herself
Special Probation Condition 14 requires Clifton to "cooperate with obtaining a guardian/conservator/payee as determined clinically appropriate by the IDP+ clinician." Clifton's attorney did not object to this condition of probation, and the sentencing judge did not discuss this probation condition during his sentencing remarks. But on appeal, Clifton argues that this probation condition improperly infringes her rights to liberty and privacy; she argues that the record fails to disclose any significant reason to doubt that she will be capable of managing her own affairs when she is released from prison.
Because there was no objection to this probation condition, Clifton must show that it amounts to plain error.[5]
In its brief to this Court, the State acknowledges that there are problems with the sentencing court's directive that Clifton "cooperate" with the process of obtaining a guardian or conservator. We agree that this probation condition is problematic.
Any proceeding to appoint a guardian or conservator for Clifton against her will-i.e. , a proceeding to divest Clifton of her ordinary control over her life-would be an adversarial proceeding in which Clifton would be entitled to significant procedural rights. The challenged probation condition appears to *305 strip Clifton of those procedural rights, by requiring her to "cooperate" with the efforts to appoint a guardian or conservator to manage her affairs.
Given the importance of the rights at stake, we conclude that this issue should be governed by rules analogous to the rules we adopted in Kozevnikoff for probation conditions that compel a defendant to ingest psychotropic medication.
In other words, before a sentencing court requires a defendant to relinquish their normal right to oppose the involuntary appointment of a guardian or conservator, the court must subject this proposed condition of probation to special scrutiny, and the court must have affirmative evidence that the defendant will be incapable of managing their own affairs when the defendant is released from prison. If the defendant has been sentenced to a lengthy term of imprisonment, then it would ordinarily be premature for a sentencing court to make this determination until near the time of the defendant's release.
For these reasons, we conclude that it was plain error for the sentencing court to impose Special Probation Condition 14. We vacate this probation condition, and we direct the superior court to reconsider this matter.
The probation conditions requiring Clifton to submit to warrantless searches for controlled substances
Three of Clifton's probation conditions deal with warrantless searches for controlled substances. Special Probation Condition 7 requires Clifton to submit to breath, urine, or blood testing for controlled substances at the request of her probation officer. Special Probation Condition 8 requires Clifton to "submit a sufficient sample of [her] bodily fluids for testing ... [at] the direction of the Probation Officer." And Special Probation Condition 9 requires Clifton to submit to searches of "[her] person, personal property, residence[,] or any vehicle in which [she] may be found, for the presence of ... illegal drugs, and/or drug paraphernalia."
In the superior court, Clifton's attorney objected to these probation conditions on the ground that the record contained no evidence that Clifton had abused controlled substances. In Clifton's pre-sentencing comments, she declared that, for religious reasons, she did not even drink alcohol, much less take controlled substances unlawfully.
Under Roman v. State , 570 P.2d 1235 (Alaska 1977), conditions of probation must be "reasonably related to the rehabilitation of the offender and the protection of the public and must not be unduly restrictive of liberty."[6] And conditions that restrict constitutional rights are subject to special scrutiny: before imposing such conditions, a sentencing judge must affirmatively consider and have good reason for rejecting less restrictive alternatives.[7]
Thus, in Roman , our supreme court held that a probationer or parolee is entitled to the normal protection against warrantless searches unless those searches are "reasonably ... required by the legitimate demands of [the supervising] authorities"[8] -by which the court meant that the reason for authorizing these searches must be based on the defendant's rehabilitation and/or the protection of the public.[9]
Here, Clifton's attorney asserted that the record contained no evidence that Clifton had ever abused controlled substances-and the sentencing judge made no finding to the contrary. Rather, the sentencing judge imposed these three probation conditions without analyzing whether they were justifiable under Roman . Because the defense attorney actively objected to these conditions, the judge's action was improper.
On appeal, the State argues that these probation conditions were justified because the record suggests that Clifton was taking controlled substances at the time of her offenses in this case. But the record *306 also indicates that Clifton was taking these substances under prescription. And, more importantly, the sentencing judge made no finding as to whether Clifton's ingestion of these prescribed substances had any relationship to her criminal behavior.
The State is essentially asking this Court to decide in the first instance whether the challenged probation conditions are justified. But that was a matter for the sentencing judge to decide-and the sentencing judge never made the necessary finding under Roman .
Accordingly, we vacate Special Probation Conditions 7, 8, and 9.
We note that, toward the end of Clifton's opening brief, she declares that she also wishes to challenge Special Probation Condition 12, which requires her to "actively participate [in] and successfully complete substance abuse programming ... as recommended by [a] designated outpatient provider or at the discretion of the probation officer".
However, all of the substantive discussion contained in Clifton's briefs to this Court relates to the warrantless search requirements of Special Probation Conditions 7, 8, and 9. Clifton never addresses the treatment program requirement of Special Probation Condition 12. We therefore do not address Clifton's potential attacks on Special Probation Condition 12.
Clifton's objection to a statement in the pre-sentence report
In the "evaluation" section of Clifton's pre-sentence report, the pre-sentence investigator referred to Clifton's "methodical and meticulous efforts ... to murder the two individuals". In the superior court, Clifton's attorney objected that this characterization was materially inaccurate. The defense attorney noted that Clifton was only charged with attempting to murder one person (her direct supervisor). With respect to the other person in the room (the human resources manager), Clifton was charged with third-degree assault for placing that person in fear of imminent serious physical injury.
We agree with Clifton that the statement in the pre-sentence report is potentially confusing or misleading. Although the record supports the conclusion that Clifton was willing to kill the human resources manager (in addition to killing her direct supervisor), the record does not support the conclusion that Clifton actively attempted to kill the human resources manager.
We therefore direct the superior court to amend the challenged statement in the pre-sentence report.
Conclusion
For the reasons explained here, we vacate the five probation conditions that Clifton challenges in this appeal: Special Probation Conditions 7, 8, 9, 11, and 14. We further direct the superior court to amend the challenged statement in the pre-sentence report.
In all other respects, the superior court's judgement is AFFIRMED.

433 P.3d at 546-48, 2018 WL 3679314 at *1-2 (Alaska App. 2018).

433 P.3d at 1060-61, 2018 WL 6273351 at *2 (Alaska App. 2018).

Kozevnikoff , 433 P.3d at 547-48, 2018 WL at 3679314 at *2.

Id. , 2018 WL 3679314 at *2.

State v. Ranstead , 421 P.3d 15, 23 (Alaska 2018).

Roman , 570 P.2d at 1240.

Peratrovich v. State , 903 P.2d 1071, 1079 (Alaska App. 1995).

Roman , 570 P.2d at 1237.

Roman , 570 P.2d at 1240, as later interpreted in State v. Thomas , 133 P.3d 684, 685-86 (Alaska App. 2005).